Melvin **WILLIAMS**, Plaintiff–Appellant,

v.

**BOWMAN LIVESTOCK EQUIPMENT COMPANY**, Defendant–Appellee.

No. 89–6356.

United States Court of Appeals,
Tenth Circuit.

March 12, 1991.

Greg Haubrich of Abel, Musser, Sokolosky & Clark, Oklahoma City, Okl., for plaintiff-appellant.

Bruce V. Winston of Stewart & Elder, Oklahoma City, Okl., Dennis E. Martin and Lowell R. Johnson of Martin & Martin, Omaha, Neb., for defendant-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Melvin Williams brought this diversity product liability action in the United States District Court for the Western District of Oklahoma against defendant Bowman Livestock Equipment Company (Bowman Livestock), a Nebraska corporation. This appeal is from an order of the district court that dismissed Williams' complaint for lack of personal jurisdiction over Bowman Livestock. The only issue on appeal is whether the district court could exercise personal jurisdiction over the nonresident corporate defendant. Resolution of that issue requires us to consider whether advertising in national journals that might have subscribers in Oklahoma provides a sufficient jurisdictional base, or whether Bowman Livestock is responsible as a successor to a defunct corporation previously operated by the same owner.[1]

## I

The facts pertinent to this appeal are undisputed. Williams was injured in Oklahoma on September 29, 1987, when he was struck by a mechanism known as a "cattle squeeze chute." This device was manufactured in Nebraska and shipped to Oklahoma by Bowman Hydro–Vat, Inc. (Bowman Hydro–Vat), a Nebraska corporation engaged in the business of manufacturing and distributing livestock handling equipment.

Bowman Hydro–Vat was incorporated in the early 1970s by Jim Bowman who was its president and majority shareholder. Until 1977, Bowman Hydro–Vat apparently manufactured all the equipment it distributed. In 1977, Bowman Hydro–Vat began distributing equipment that was manufactured under Bowman Hydro–Vat's name by Kisgen Manufacturing Company (Kisgen), another Nebraska corporation. After 1977, Bowman Hydro–Vat continued to manufacture some equipment, but the majority of

the equipment it distributed was manufactured by Kisgen. Between the early 1970s and 1984, Bowman Hydro–Vat employed as many as seventy-five people.

In February 1984, Bowman Hydro–Vat ceased operations when its assets were seized and liquidated by a secured creditor. Approximately two months later, Bowman Livestock was formed by Jim Bowman, who is its president and sole shareholder. Bowman Livestock did not purchase any significant assets of Bowman Hydro–Vat.[2] At present, Bowman Livestock employs two people, Jim Bowman and a secretary who was never employed by Bowman Hydro–Vat. Bowman Livestock does not itself manufacture any equipment and is engaged only in the business of distributing livestock equipment manufactured by Kisgen.

Williams brought this action contending that Bowman Livestock is liable as a successor corporation for any injuries caused by products manufactured by Bowman Hydro–Vat. The district court dismissed the action, concluding that it did not have in personam jurisdiction over Bowman Livestock. We affirm.

## II

 Our review of the district court's jurisdictional ruling is de novo. *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1375 (10th Cir.1989). The following standard controls:

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affi-

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

**2.** The record indicates that the only Bowman Hydro–Vat assets ever purchased by Bowman Livestock were a desk and a chair that were acquired from a third party.

davits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985) (citations omitted).

■ In a diversity case a plaintiff must satisfy the requirements of the forum's long arm statute as well as the federal Constitution to establish personal jurisdiction. *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990). Oklahoma's long arm statute is coextensive with the constitutional limitations imposed by the Due Process Clause. *Rambo v. American S. Ins. Co.,* 839 F.2d 1415, 1416–17 (10th Cir.1988).[3] Therefore, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long arm statute authorizes jurisdiction over a nonresident defendant.

■ Due process requirements are satisfied when personal jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). "The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposely avail[ed] itself of the privilege of conducting activities within the forum state.'" *Rambo,* 839 F.2d at 1417 (quoting *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1131 (10th Cir.1987) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958))).

III

■ Williams attempts to establish personal jurisdiction over Bowman Livestock on two specific grounds. First, he argues that Bowman Livestock's national advertising of the products it distributes provides sufficient Oklahoma contacts upon which to base jurisdiction. By itself, however, national advertising that reaches the forum state is not always sufficient to establish minimum contacts. *See, e.g., Fidelity & Cas. Co. v. Philadelphia Resins Corp.,* 766 F.2d 440, 446–47 (10th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). Indeed, when the record on appeal contains no information regarding the extent of national advertising or how much business was derived from such advertising, there is no basis for determining whether the advertising establishes minimum contacts. *See, e.g., Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 700 n. 10 (3d Cir.1990); *Singletary v. B.R.X., Inc.,* 828 F.2d 1135, 1136–37 (5th Cir.1987); *Growden v. Ed Bowlin & Assocs.,* 733 F.2d 1149, 1151–52 (5th Cir.1984); *Loumar, Inc. v. Smith,* 698 F.2d 759, 763–64 (5th Cir. 1983); *Composite Marine Propellers, Inc. v. VanDerWoude,* 741 F.Supp. 873, 877–78 (D.Kan.1990).

The instant record contains no information regarding the extent of Bowman Livestock's national advertising or how much business was derived from that advertising. The record only indicates that Bowman Livestock advertised in several national trade magazines to which individuals in Oklahoma possibly subscribed. *See* I R. tab 15, exh. D at 39–40. We therefore conclude that Bowman Livestock's national advertising is insufficient to establish minimum contacts. *See Fidelity & Cas. Co.,* 766 F.2d at 443, 446–47 (minimum contacts absent though defendant advertised in a national trade magazine that presumably reached the forum state).

■ Williams next contends that Bowman Hydro–Vat's Oklahoma contacts can

---

**3.** Oklahoma's long arm statute, Okla.Stat. tit. 12, § 2004(F), provides: "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." The Committee

Comment to § 2004 explains that Oklahoma's long arm statute "authorizes the exercise of judicial power to the limits of the due process clauses of the Oklahoma and United States Constitutions."

be attributed to Bowman Livestock because it is liable as a successor corporation for the acts of Bowman Hydro–Vat. We disagree.

 A corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor. *See City of Richmond v. Madison Management Group*, 918 F.2d 438, 454 (4th Cir.1990), and cases cited therein. Oklahoma law, however, would not hold Bowman Livestock liable for the actions of Bowman Hydro–Vat. Oklahoma statutory and common law principles establish that successor liability can be imposed when there is a statutory merger or consolidation, *see* Okla.Stat. Ann. tit. 18, § 1088, or, in limited circumstances, a sale or transfer of all, or substantially all, the assets of a corporation, *see Pulis v. United States Elec. Tool Co.*, 561 P.2d 68, 69 (Okla.1977).[4]

The facts as established in the record, even when viewed in the light most favorable to Williams, do not provide a basis for successor liability. Bowman Livestock simply came into existence when Bowman Hydro–Vat's assets were liquidated by a secured creditor or through Chapter 7 bankruptcy proceedings; there was neither a statutory merger or consolidation of Bowman Hydro–Vat and Bowman Livestock nor a sale or transfer of all, or substantially all, of Bowman Hydro–Vat's assets to Bowman Livestock.

 Williams argues that because of similarities in the business operations, shareholders and officers of Bowman Livestock and Bowman Hydro–Vat, Bowman Livestock is liable as a mere continuation of Bowman Hydro–Vat. We disagree. Under Oklahoma law, a prerequisite for the imposition of liability against a corporation as a mere continuation of a predecessor is a sale or transfer of all, or substantially all, the assets of the latter to the former. *See Pulis*, 561 P.2d at 69; *see also Evanston Ins. Co. v. Luko*, 783 P.2d 293, 296 (Haw. Ct.App.1989) ("All of the foregoing excep-

tions, whereby one corporation may be held liable for the debts and liabilities of another corporation, presupposes a transfer of assets...."); *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wash.2d 403, 645 P.2d 689, 691–92 (1982) (imposition of successor liability unwarranted, even when justifications for successor liability apply, when the theory of liability invoked requires transfer of assets and no transfer of assets occurred). Without such a transfer of assets, there is no basis to impose liability on Bowman Livestock as a mere continuation of Bowman Hydro–Vat. Consequently, Bowman Hydro–Vat's Oklahoma contacts cannot be attributed to Bowman Livestock and it is not liable for the actions of Bowman Hydro–Vat.

The judgment of the district court dismissing this action for lack of personal jurisdiction is therefore AFFIRMED.

---

4. In order for a corporation that acquires all, or substantially all, the assets of another corporation to succeed to the debts and liabilities of the selling corporation there must be some evidence that (1) there was an agreement to assume such debts or liabilities, (2) there was a de facto merger, (3) the transaction was fraudulent in fact, or (4) the purchasing corporation was a mere continuation of the selling company. *See Pulis*, 561 P.2d at 69.