**Richard THOMPSON, Plaintiff,**

v.

**Layton CHAMBERS, Defendant.**

**Civ. A. No. 92–4049–S.**

United States District Court,
D. Kansas.

Sept. 18, 1992.

James E. Rumsey, Lawrence, Kan., for plaintiff.

Dennis L. Harris, Kansas City, Kan., Lynn W. Toedte, Graft, Thomson & Toedtke, P.C., Englewood, Colo., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the defendant's motion to quash service of process and to dismiss pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction over the defendant.

The plaintiff, Richard Thompson, is an attorney who resides in Kansas. He claims in this action that the defendant breached an oral contract to pay plaintiff certain fees and reimburse his expenses associated with a gold mine located in Arizona. Defendant Layton Chambers, a resident of Colorado, is an investor and an investment banker. In his motion, defendant denies the existence of any contract or agency relationship between the parties and contends that the court lacks personal jurisdiction.

## BURDEN OF PROOF

The plaintiff has the burden of establishing personal jurisdiction over a defendant, but the burden of proof varies depending upon the procedure employed to determine the issue. The district court has the discretion to consider a motion to dismiss for lack of jurisdiction on the basis of affidavits and other written materials. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (citations omitted). If a motion to dismiss for lack of jurisdiction is submitted prior to trial on the basis of affidavits and other written materials, plaintiff is initially required only to make a prima facie showing to avoid dismissal.[1] *Id.; Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1130 (10th Cir.1991); *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

The allegations set forth in the complaint must be accepted as true to the extent they are not controverted by the defendant's affidavits. *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d at 1130–31 (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d at 733). "However, only the well-pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Ten Mile Indus. Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987) (citing *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976)), *cited with approval in Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d at 174. The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading. *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989) (citing *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir.1947)).

If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing will withstand a contrary presentation by the party moving for dismissal for lack of personal jurisdiction. *Williams*, 927 F.2d at 1130–31; *Behagen*, 744 F.2d at 733. However, to be sufficient to put the contested facts in issue, affidavits submitted in support of or in opposition to motions to dismiss for lack of jurisdiction must comply with the requirements of Fed.R.Civ.P. 56(e); *i.e.*, they must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d at 175 & n. 6.

On the basis of these guidelines, the court makes the following findings of fact for the limited purpose of this pretrial determination of the question of personal jurisdiction.

## JURISDICTIONAL FACTS

Plaintiff, an attorney, resides in Kansas and maintains offices in Kansas. Defendant resides in Colorado and is engaged in the business of brokering equity financing for business and investment ventures.[2]

---

1. Even if the plaintiff need only initially establish a prima facie showing that the court has personal jurisdiction over the defendant, by the end of trial the plaintiff must have proved the requisite jurisdictional facts by a preponderance of the evidence. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d at 174 (citing *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978)).

2. Although the complaint alleges that the defendant is engaged in the business of equity financing "throughout the United States," plaintiff does not claim this court has general jurisdiction over the defendant on the basis of any continuous and systematic contacts in Kansas. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984) (distinguishing between "general jurisdiction" and "special jurisdiction"). Rather, plaintiff contends that his claim arises out of defendant's contacts with Kansas, which amounts to an assertion of special jurisdiction. *See id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8. The threshold for establishing the requisite minimum contacts is said to be higher for claims alleging general jurisdiction as op-

In 1989, plaintiff became a shareholder and president of American Mineral Industries, Inc. (AMI), an Arizona corporation. AMI was a partner in an Arizona venture formed to operate a gold mine located in Arizona. Other partners in the Arizona venture were Midwest Gold Limited Partnership, whose partners were all residents of Kansas; Columbia Gold Production Company, Inc., an Arizona corporation; and individual shareholders of Columbia Gold Production Company, Inc. who resided in Arizona and Colorado.[3] AMI was to obtain the lease, operate the mine, and provide some investment capital. AMI also had the expertise to operate the gold mine. AMI found itself in need of capital to acquire, develop, and operate the mine to full production.

Plaintiff contacted the defendant in California by telephone in February 1989, from his law office in Chanute, Kansas, and proposed that defendant evaluate the Arizona venture as an investment opportunity.[4] The plaintiff admits that he "interested" defendant in becoming an investor in the Arizona mining venture. Defendant agreed to evaluate the project's investment potential and to locate investors. At some point, however, defendant stated that before he would invest in the Arizona venture, the individual Kansas investors would have to sell their equity in the venture.[5]

posed to those claiming special jurisdiction, at least when the defendant is served outside the forum state. *See* Wright & Miller, Federal Practice and Procedure: Civil 2d § 1067, at 296–98 (1987 & Supp.1992).

3. The plaintiff's affidavit, in contrast to the complaint, states simply that the Arizona venture had several principal owners, including one individual who resided in Colorado, three who lived in Arizona, and four who resided in Kansas. The affidavit also states that an additional investor was a Kansas *general* partnership named Midwest Gold Productions. The defendant's motion, however, alleges that Midwest Gold Limited Partnership was one of the original investors in the venture. The court assumes that Midwest Gold Productions, a general partnership, was the surviving entity following certain transactions among the original investors in the Arizona venture. Although plaintiff refers to Midwest Gold Productions as a Kansas general partnership, he does not allege that all members of the general partnership were Kansas residents. The documents on file with the court do not reveal the respective fractional ownership interests of any of the partners in the Arizona venture.

4. Defendant's motion to dismiss asserts that he was a resident of California at the time plaintiff initially contacted him about the Arizona venture, and plaintiff admits in his affidavit that defendant was living in California at that time. Defendant asserts that he resided in California until July 1989, when he moved to Colorado. Defendant has submitted a letter typed on plaintiff's letterhead that was addressed to defendant at a California address on August 13, 1989. Plaintiff's complaint alleges defendant is presently a resident of Colorado. Since the plaintiff does not challenge defendant's assertions regarding the dates of his residency in California, the court accepts them as true. The court finds

that at all relevant times the defendant resided in either California or Colorado.

5. Plaintiff's affidavit does not indicate to whom defendant allegedly required the Kansas individuals to sell their interests in the venture. Defendant's responsive affidavit alleges that as a prerequisite for his investment, he and the other investors he brought into the venture would have to acquire a 50 percent undivided equity interest in the mine. Because a 50 percent cash buyout of existing equity was not deemed feasible, the only other alternative to meet defendant's condition was to require each of the other partners in the venture to suffer a 50 percent equity dilution. Defendant alleges that plaintiff took it upon himself to arrange a plan by which some of the partners' interests would be bought out by gold production from the mine, while all other remaining partners would together retain a 50 percent interest in the venture after defendant's investors acquired a 50 percent share. Since the plaintiff admits in his affidavit that the sale of the interests owned by the Kansas individuals was a condition imposed by the defendant *before* he invested, the court must assume that the plaintiff's plan was that the Kansas individuals would sell their interests to others who were then partners in the Arizona venture, not to the defendant. This inference is supported by a handwritten, undated letter from the plaintiff to the defendant indicating that defendant was not a party to certain proposed transactions among particular investors in the venture. The defendant admits he agreed to plaintiff's plan to acquire the interests of some of the investors by way of a gold production earn-out so that defendant and his investors could ultimately acquire a 50 percent interest.

Although the plaintiff's response alleges that the defendant asked plaintiff to negotiate the purchase of the Kansas investors' interests *by the defendant*, the supporting affidavit upon which this assertion relies does not so state. The court may reconcile the parties' affidavits and supporting documents by assuming that the

Plaintiff asserts that sometime after the initial contact, the defendant retained plaintiff to perform various legal and business tasks for defendant and defendant's unnamed partner who resided in Colorado. These services included the negotiation of the sale of the individual Kansas investors' interests in the Arizona venture. Defendant also engaged plaintiff to prepare partnership agreements for the Arizona venture, and plaintiff sent drafts of such agreements to a Colorado attorney. The agreement for plaintiff's services was made orally by telephone from plaintiff's Kansas office, and was not put in writing. Defendant agreed to pay for plaintiff's services at an hourly rate and to reimburse out-of-pocket expenditures incurred on defendant's behalf.

In March 1989, defendant requested more time to find sufficient investors. At that time he acknowledged that certain operating expenses associated with maintaining the mining project would need to be paid to keep the venture viable.

On or about April 1, 1989, defendant represented to the plaintiff that defendant would see that plaintiff was reasonably compensated for his time and expenses if plaintiff would continue to manage AMI[6] while defendant was obtaining the necessary financing. Thereafter, defendant continued to represent that he would reasonably compensate plaintiff. Relying on these representations, plaintiff performed various tasks for AMI, including preparation of financial statements for the investors, ensuring the mine was maintained so as to keep in effect the mineral lease and

its operating license and permits, engaging counsel to defend AMI and defendant in litigation filed in Arizona by the shareholders of Columbia Gold Production Company, Inc., and other services necessary for the management of AMI. Although it was necessary to perform some of these tasks in Arizona, plaintiff spent a substantial amount of his time working on these matters in his Kansas office. Plaintiff also held meetings in Kansas with the Kansas investors during the spring and summer of 1989 in order to structure the partners' ownership interests in the Arizona venture as required by the defendant.

Between April 1, 1989, and January 31, 1990, plaintiff performed management services he values at $27,900 related to the Arizona venture. In addition, he paid $3,298 for related travel expenses and $1,806 for budget preparation expenses. Plaintiff advanced $10,000 in legal fees to an Arizona law firm to defend litigation filed against AMI and its shareholders and officers. Finally, between April 1989 and October 1989, plaintiff advanced $27,865 including transfer fees to B.J. Washburn in Arizona for expenses associated with operating the mine.[7] Plaintiff claims the defendant owes him all of these amounts for breach of implied contract.

In response to the defendant's motion to dismiss for lack of jurisdiction, which is supported by the affidavit of the defendant and documentary evidence, the plaintiff has submitted his own affidavit and those of Bobby Jack Washburn, an Arizona resident; Larry Nelson, a Kansas resident; Joe Stocks, an Arizona resident; and Al-

---

plaintiff negotiated with at least some investors residing in Kansas with the intent of consolidating interests in the mine in such a way as to permit defendant's investors to ultimately acquire an undivided 50% interest in the venture from the remaining group of owners. The defendant admits he agreed to the plaintiff's plan to consolidate some of the interests owned by other investors with a production earn-out. However, the plaintiff does not specifically allege that the defendant knew, at the time he agreed to the plan, where any of the individual investors resided.

**6.** Plaintiff's complaint also alleges that he was managing Columbia Gold Limited Partnership as well as AMI. Although the complaint refers

to Columbia Gold Limited Partnership as the recipient of capital from Columbia Gold Production Company, Inc., one of the partners in the Arizona venture, the complaint does not indicate the relationship, if any, between Columbia Gold Limited Partnership and the Arizona venture. Because the court is required to assume as true only the "well-pled facts" of the complaint, the plaintiff's allegations regarding the Columbia Gold Limited Partnership are disregarded. *See Ten Mile Indus. Park v. Western Plains Service Corp.*, 810 F.2d at 1524.

**7.** In total, plaintiff claims the defendant owes him $71,148. However, the figures itemized as claimed damages add to $70,869.

dine Coffman, Jr., a Colorado resident. Plaintiff's affiants were all involved in some way in the Arizona venture, either as investors or as "principal parties." Three affiants each assert that the defendant personally acknowledged to him that plaintiff performed legal and business services on defendant's behalf in Arizona and Kansas. Two affiants state that defendant also personally acknowledged that he owed plaintiff monetary sums for such services.[8]

The plaintiff does not challenge the defendant's assertion that he was never personally present in Kansas at any time pertinent to the plaintiff's claim. The defendant never obtained the necessary equity financing, and consequently he never obtained an interest in the Arizona venture. The plaintiff does not contend that the defendant ever made any payments to him in Kansas. In fact, plaintiff alleges that in February 1990, plaintiff demanded payment from defendant for the services performed and expenses incurred, which defendant refused to pay. Plaintiff filed this lawsuit on March 9, 1992. The summons was served personally on the defendant in Colorado by a private process server.

■■■ The defendant denies that he agreed to reimburse plaintiff for his out-of-pocket expenses, and contends that he agreed only to pay plaintiff a $50,000 finder's fee in the event that the proposed investment closed. The defendant also denies that he ever retained the plaintiff to perform any services on his behalf. However, these contentions must be disregarded for purposes of deciding the motion to dismiss because they controvert the plain-

tiff's assertions of fact. *See Behagen v. Amateur Basketball Ass'n,* 744 F.2d at 733. The defendant has also submitted documentary evidence in the form of letters written by the plaintiff to support his allegation that the plaintiff advanced funds for the Arizona venture knowing that he was doing so at his own risk. However, the letters also support an inference that the plaintiff was in fact representing defendant's interests with defendant's acquiescence. In considering a motion to dismiss for lack of personal jurisdiction on the basis of documentary evidence alone in the absence of an evidentiary hearing, the district court may not weigh the factual evidence; any factual dispute must be resolved in the plaintiff's favor. *Ten Mile Indus. Park v. Western Plains Service Corp.,* 810 F.2d at 1524.

## ANALYSIS

■■■ Subject matter jurisdiction lies in federal court on the basis of 28 U.S.C. § 1332(a)(1), since this is a matter between citizens of different states. The issue of whether a federal court has personal jurisdiction over a nonresident defendant in a diversity case is to be determined on the basis of the law of the forum state. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). The court's exercise of personal jurisdiction in a diversity case must comport with the standards of both the forum state's long-arm statute as well as the due process clause of the United States Constitution. *See Omni Capital Int'l v. Rudolf Wolff & Co. Ltd.,*

**8.** Three of the affiants also each alleged, in virtually identical paragraphs, that they were "aware" of specific activities conducted in Kansas by plaintiff at the request of the defendant. Two affiants refer to Midwest Gold as a Kansas partnership "promoted" by the defendant to continue as a principal party in the Arizona venture. Another affiant, a partner in Midwest Gold, asserted that it was his "understanding" that plaintiff represented defendant during the meetings he attended in Kansas and that the purpose of the meetings was to negotiate the sale of his interest in the Arizona venture to defendant. The court notes that the affiants have not asserted personal knowledge that the defendant in fact *requested* that plaintiff per-

form particular activities on his behalf, that defendant in fact promoted Midwest Gold to continue as a principal party in the venture, or that defendant in fact sought to directly purchase the interests of any Kansas investor. Since these assertions are not based upon personal knowledge, the court must disregard them. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d at 175 n. 6; *cf. Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 (3d Cir.1984) ("mere affidavits which parrot and do no more than restate plaintiff's allegations without ... factual content do not end the inquiry"), *quoted in Oaklawn Apartments,* 959 F.2d at 174.

484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987); *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990); *Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1445 (D.Kan.1986); Fed.R.Civ.P. 4(e); 4(f).

■ In Kansas, these inquiries are for all practical purposes the same because the long-arm statute, K.S.A. 60–308(b), has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause. *Equifax Services, Inc. v. Hitz*, 905 F.2d at 1357; *see St. Paul Surplus Lines Ins. Co. v. International Playtex*, 245 Kan. 258, 777 P.2d 1259 (1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990); *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089, 1092 (1987).

The Kansas long-arm statute, K.S.A.1991 Supp. 60–308(b), provides in pertinent part as follows:

> (b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts: (1) Transaction of any business within this state;
>
> .   .   .   .   .
>
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state; ....

The plaintiff initially contends that the court has personal jurisdiction over the defendant on the basis of subsection (b)(1), reasoning that the defendant transacted business in Kansas and had significant contacts with residents of Kansas through the plaintiff acting as his agent. In the alternative, plaintiff argues the court has jurisdiction on the basis of subsection (b)(5), in that the defendant entered into an express or implied contract with the plaintiff.

■ To establish jurisdiction in Kansas over a nonresident defendant on the basis of transacting business within the state, there are three basic factors that must coincide: (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice, considering the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *St. Paul Surplus Lines Ins. Co. v. International Playtex*, 777 P.2d at 1263–64 (quoting *White v. Goldthwaite*, 204 Kan. 83, 88, 460 P.2d 578, 582 (1969)).

The *Goldthwaite* standard for jurisdiction under K.S.A.1991 Supp. 60–308(b)(1) is essentially the same as the three-prong test for determining the sufficiency of contacts necessary to ensure that the exercise of personal jurisdiction comports with due process. *See National Gypsum Co. v. Dalemark Indus., Inc.*, 773 F.Supp. 1476, 1479–80 (D.Kan.1991) (citations omitted). Thus, if the plaintiff cannot satisfy this standard so as make out a prima facie showing of personal jurisdiction, due process considerations would also preclude the exercise of personal jurisdiction on the basis of K.S.A.1991 Supp. 60–308(b)(5), which would otherwise appear to permit the exercise of personal jurisdiction over the defendant on the basis of an implied contract performed in part by the plaintiff in Kansas.

■ In this case, the court finds that the defendant did not purposefully do any act or consummate any transaction in Kansas, either himself or through plaintiff as his agent. Defendant's interest in the Arizona mine venture was solicited by the plaintiff, who happened to reside in Kansas. Even if defendant established an agency relationship with the plaintiff, ei-

ther explicitly or implicitly, the facts alleged by the plaintiff do not show that the defendant had any purpose to transact business or attempt to transact business *in Kansas.* Rather, the facts construed in favor of plaintiff show simply that the defendant was contacted in California by the plaintiff about investing in an Arizona mine, that defendant expressed interest in doing so if he and his investors could obtain a 50 percent ownership interest, and that he approved of the plaintiff's proposal to restructure the existing ownership interests in order to permit defendant to acquire a 50 percent interest in the venture.

Although plaintiff may have believed it was necessary to conduct activities in Kansas for the purpose of complying with the defendant's condition, such as meeting with Kansas residents to persuade them to sell their interests in the venture, the facts alleged do not show that the *defendant* had such a purpose in mind. The defendant sought to invest in the Arizona mine, not the fractional interests owned by partners in the Arizona venture, some of whom incidentally resided in Kansas. *Compare Source Associates, Inc. v. Suncast Group,* 709 F.Supp. 1023, 1025 (D.Kan.1989) (plaintiff established jurisdiction under K.S.A. 60–308(b)(1) by showing that the defendant's agent contacted plaintiff for purposes of soliciting plaintiff's purchase of merchandise from defendants); *Prather v. Olson,* 1 Kan.App.2d 142, 147, 562 P.2d 142, 146 (1977) (defendant personally sent mail solicitations for his Missouri cattle tax shelter program to Kansas; defendant's Kansas accountant discussed the program with plaintiff and told defendant of plaintiff's interest). In this case, any transaction or attempted transaction of business in Kansas on behalf of defendant was instigated by the plaintiff, and at most the plaintiff's allegations show that the defendant acquiesced in plaintiff's activities in Kansas. The court finds that the plaintiff's activities in Kansas were primarily for the plaintiff's own benefit as a shareholder and president of AMI who was in need of capital to protect his own investment in the Arizona venture. *See White v. Goldthwaite,* 460 P.2d at 583 ("The diffi-

culty is these were all activities of plaintiff, not defendant, and were of such nature as to serve his convenience and benefit rather than [defendant's].")

██ A plaintiff's unilateral activities in the forum state, even as the purported agent of the defendant, cannot be used to bootstrap a nonresident defendant into the forum state on the basis that he transacted business there. *See Hansön v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) ("unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"); *Home–Stake Prod. Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1019 (10th Cir.1990) (unilateral activity of another party or third person cannot provide the necessary contact with the forum state) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)); *see also Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir.1989) (agent's authority to act cannot be established solely from the agent's actions; authority must be established by act of principal; no personal jurisdiction over defendant where plaintiff did not allege defendant authorized agents to act in forum state).

██ Even if the defendant in this case is assumed to have entered into a contract with the plaintiff for services, from which the plaintiff's claim arises, that is not sufficient by itself to establish personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). Instead, the factors that must be evaluated for due process purposes are the prior negotiations and contemplated future consequences of the contract, along with the terms of the contract and the parties' actual course of dealing, in determining whether the defendant established the necessary minimum contacts with the forum to support personal jurisdiction. *Id.* at 479, 105 S.Ct. at 2185; *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1358 (10th Cir.1990).

In this case, the future consequences defendant would reasonably have contemplated as a result of his agreement with the plaintiff would have occurred in Arizona, where the gold mine was located. The defendant is not alleged to have known at the time he entered into the agreement that several of the individual owners of fractional interests in the Arizona gold mine were residents of Kansas. In contracting with plaintiff to restructure the equity ownership in the Arizona venture, there was nothing in the alleged agreement requiring plaintiff to perform the contract in Kansas, even though in hindsight it may have been inevitable that he would do so. The fact that plaintiff ultimately conducted activities in Kansas related to the contract is not pertinent to the question of whether *defendant* contemplated such activities in Kansas. Defendant did not send any payments to the plaintiff in Kansas, nor to any of the other Kansas investors. He never personally travelled to Kansas to negotiate any of the transactions with investors in the Arizona venture. He never acquired any interest in the Arizona venture. Nor does plaintiff allege that defendant derived any monetary benefit from the activities plaintiff performed in Kansas on his behalf.

The court finds that the defendant did not purposefully do any act or consummate any transaction in Kansas that would permit this court to exercise personal jurisdiction consistent with due process. The court concludes that it lacks personal jurisdiction over the defendant in this case, and the defendant's motion to quash service of process and dismiss for lack of jurisdiction will therefore be granted.[9]

IT IS BY THE COURT THEREFORE ORDERED that the defendant's motion to quash service of process and motion to dismiss for lack of personal jurisdiction (Doc. 4) is hereby granted.

---

9. The court notes that the plaintiff has indicated that if this court determines that Kansas is not the proper forum for this litigation, he would pursue a change of venue under 28 U.S.C. § 1404(b) to the federal district court in Arizona. Section 1404(b), however, does not permit the court to transfer any action to another district. If the plaintiff intended to refer to subsection (a) of § 1404, which permits the court to transfer any civil action to any other district where it might have been brought, the court finds that the facts alleged do not support a conclusion that a transfer to Arizona would be more convenient for the parties and the witnesses. The plaintiff's request for a change of venue to the district of Arizona is therefore denied.