Michael L. FLANNAGAN and Linda Flannagan, his spouse, Plaintiffs,

v.

Ghassan L. BADER, American Arms, Inc., Defendants,

v.

HORNADY MANUFACTURING COMPANY and Hodgdon Powder Company, Inc., Third-party Defendants.

No. 94–2424–JWL.

United States District Court, D. Kansas.

Oct. 19, 1995.

Harvey L. Kaplan, George E. Wolf, Craig C. Zahnd, Shook, Hardy & Bacon, Kansas City, MO, Edward A. Moss, William L. Petros, Anderson, Moss, Parks & Sherouse, Miami, FL, for Michael L. Flannagan, Linda Flannagan.

Harold E. Pierce, Couch, Strausbaugh, Pierce & King, Chtd., Overland Park, KS, for Ghassan L. Bader.

Barry W. McCormick, Scott M. Adam, Payne & Jones, Chtd., Overland Park, KS, Harold E. Pierce, Couch, Strausbaugh, Pierce & King, Chtd., Overland Park, KS, for American Arms Inc.

Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, KS, Kevin Colleran, Gregory S. Heier, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, NE, for Hornady Manufacturing Company.

Matthew R. Davis, Law Offices of Rex R. Redhair, Kansas City, MO, for Hodgdon Powder Company, Inc.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case comes before the court on the third-party defendant Hornady Manufacturing Company's ("Hornady") motion to dismiss (Doc. # 72), as against Hornady, the First Amended Complaint of Michael and Linda Flannagan (Doc. # 43) and the Third–Party Petition of American Arms, Inc. ("American") (Doc. # 44) pursuant to Federal Rule of Civil Procedure 12(b)(2). Hornady asserts that it is not subject to personal jurisdiction in this forum.

### II. Facts

Southern Ohio Gun Distributors ("Southern Gun") is a customer of American, a Kansas corporation with its principal place of

business in North Kansas City, Missouri. Defendants American, Hornady [1], and Hodgdon Powder Company, Inc.[2] ("Hodgdon") sponsored the "2nd Annual Hornady, Hodgdon Powder and American Arms Prairie Dog Shoot" which was held in Wyoming. The purpose of this prairie dog hunt, according to Stephen Hornady [3], was to build customer goodwill and, as a result, bring a future financial benefit to the three sponsors. Each sponsor was entitled to invite two guests. The invitations, which had the above name and each sponsor's corporate name or logo on it, were sent out to all guests by Ghassan Bader, a Kansas resident and the president of American, on behalf of the three sponsors. Mr. Bader, on behalf of American, sent an invitation to Steve Neal, the vice president of operations and general manager of Southern Ohio. Mr. Neal sent Michael Flannagan, a Southern Ohio employee, in his place.

On or about July 15, 1993, Mr. Flannagan, an Ohio resident, was a passenger in an automobile driven by Mr. Bader. Mr. Bader, Mr. Flannagan, and Mr. Hornady were traveling north on Lynch Road off U.S. 450 in Newcastle, Wyoming.[4] The plaintiffs allege that Mr. Bader negligently operated the motor vehicle he was driving. As a result, the motor vehicle slid off the road, flipped end over end, and landed on its top. The impact caused Mr. Flannagan to be ejected from the motor vehicle and to sustain serious bodily injury. Plaintiffs brought suit in this court based on diversity jurisdiction seeking compensation from the defendants for Mr. Flannagan's bodily injuries, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of previously existing conditions. The plaintiffs allege that these losses are either permanent or continuing in nature and, therefore, they are entitled to future losses.

1. Hornady is Nebraska corporation with its principal place of business in Nebraska.

2. Hodgdon is a Kansas corporation with its principal place of business in Kansas.

On or about July 3, 1995, defendant American filed a third-party complaint against Hornady and Hodgdon seeking indemnification for their equitable share of the damages suffered by Mr. Flannagan if American is found liable. American alleges that Mr. Bader was acting as an agent for the joint venture or enterprise entered into by American, Hornady, and Hodgdon when the three defendants decided to sponsor the prairie dog shoot. American further alleges that American, Hornady, and Hodgdon are vicariously liable for damages, if any, caused by Mr. Bader's negligent driving.

On October 4, 1995, this court entered an order reflecting that plaintiffs had voluntarily dismissed, without prejudice, their claims against Hornady and Hodgdon. As a result, defendant Hornady's motion to dismiss the plaintiffs' claims against it is moot. Therefore, the court need only determine the merits of defendant Hornady's motion to dismiss defendant American's third-party indemnification claim.

### III. Discussion

■ In order to demonstrate personal jurisdiction sufficiently to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. *See Redwine v. Franz Plasser Bahnbaumaschinen Industriegesellschaft, M.B.H.*, 794 F.Supp. 1062, 1063 (D.Kan.1992). The plaintiff's complaint and affidavits are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *Id.*

■ In considering questions of personal jurisdiction, this court has adopted a two-step analysis. First, the defendant's conduct must fall within the scope of the Kansas long-arm statute, K.S.A. § 60–308(b). The Kansas long-arm statute states that a nonresident defendant submits to the jurisdiction of the State of Kansas by, among other things, transacting any business within the state or entering into a contract with a resi-

3. Mr. Hornady is the president of defendant Hornady.

4. They were driving back to New Castle to meet the rest of the group for dinner. They had been scouting and hunting prairie dogs all day.

dent of Kansas to be performed in part or in whole in Kansas. K.S.A. § 60–308(b)(1) and (5). Second, the exercise of jurisdiction must be consistent with the requirements of due process. *Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317 (D.Kan.1995). In Kansas, these inquiries are for all intents and purposes the same because the Kansas long-arm statute, K.S.A. 60–308(b), has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause. *Id.*

■ The Tenth Circuit has endorsed a three-pronged analysis for use when examining whether a nonresident defendant has sufficient minimum contacts with the forum to satisfy constitutional requirements. *See Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1419 n. 6 (10th Cir.1988):

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

In this case, third-party plaintiff American asserts that the exercise of personal jurisdiction over Hornady is proper under K.S.A. § 60–308(b)(1) and (5) for the purposes of its third-party indemnification claim. In justification of this assertion, American alleges that Hornady entered into an implied contract with American and Hodgdon to put on the prairie dog shoot Mr. Flannagan was attending when he was injured. By means of this alleged implied contract, the three sponsors agreed to equally share the costs arising from the prairie dog shoot, reimburse each other to the extent necessary to equalize the costs, and to contribute certain goods or services necessary to put on a prairie dog shoot. American also alleges that at least part of the arrangements for the prairie dog shoot were made from Kansas and that those arrangements satisfy the doing business prong of the Kansas long-arm statute.[5]

In response, Hornady bases its argument that it is not subject to personal jurisdiction in this forum on *Thompson v. Chambers,* 804 F.Supp. 188 (D.Kan.1992). *Thompson* involved a Kansas attorney suing a Colorado investment broker for breach of an implied contract. The Kansas attorney sought fees and expenses associated with an Arizona gold mine venture. The major factual dispute involved the form of plaintiff's compensation. The plaintiff asserted that the defendant agreed to pay him for all of his expenses related to the Arizona venture; whereas, the defendant asserted that he offered to pay the plaintiff a $50,000 finder's fee in the event that the proposed Arizona mine investment closed. The *Thompson* court held that the Colorado defendant was not subject to personal jurisdiction in this forum because he "did not purposefully do any act or consummate any transaction in Kansas." *Id.* at 195. The facts construed in favor of the plaintiff indicated that the defendant was contacted by the plaintiff in California about investing in an Arizona mine, that the defendant expressed interest in the investment if he and his investors could obtain a fifty percent ownership, and that the defendant approved of the plaintiff's proposal to restructure the existing ownership interests in order to permit the defendant to acquire a fifty percent interest in the venture. *Id.* at 196. The *Thompson* court went on to conclude that, even if the defendant is assumed to have entered into a contract with the plaintiff, the future consequences the defendant would reasonably have contemplated as a result of his agreement with the plaintiff would have occurred in Arizona, where the gold mine is located. *Id.* at 196–97. As a result, even if the long arm prong of the personal jurisdiction analysis was met, the constitutional prong was not.

■ The court believes that the *Thompson* case is distinguishable from the facts alleged in this case for several reasons. First, in this case the contact between Hornady and American was not unilateral. As two of the three sponsors of the prairie dog shoot, American and Hornady worked together to

---

**5.** Any efforts defendant Hodgdon contributed oc-    curred from its Kansas place of business.

organize the prairie dog shoot which was designed to mutually benefit all three sponsors. Moreover, the title of the invitations indicate that this was the "2nd annual" prairie dog shoot put on by these sponsors. The fact that the parties had previously joined forces to put on the exact same event gives rise to the inference that the sponsors enjoyed the benefits of their previous relationship and wished to continue it in the future. In other words, the relationship between the sponsors of the prairie dog shoot was not a speculative, unilateral, or one-time relationship like the relationship in the *Thompson*. As a result of the joint sponsorship agreement between American, Hornady, and Hodgdon, the court believes that Hornady should have reasonably contemplated that future consequences arising from this joint sponsorship would occur in Kansas, Hodgdon's principal place of business and state of incorporation and American's state of incorporation. Furthermore, the fact that Mr. Hornady was in the car being driven by Mr. Bader when the accident occurred could indicate that Mr. Bader was playing a broader role at the time of the accident than just as the president of American. Not only had he sent out all the invitations to all the guests on behalf of the joint sponsorship, Mr. Bader was driving a car transporting officers of Hornady and American as well as their guests to and from the airport and the prairie dog shoot.[6]

Construing the facts of this case in favor of the third-party plaintiff, the court concludes that Hornady has sufficient minimum contacts with this forum to be reached under Constitutional Due Process requirements and under K.S.A. § 60–308(b)(1) and (5). Hornady purposefully availed itself of the privilege of conducting activities in Kansas when it voluntarily formed and continued its joint sponsorship of a prairie dog shoot with two Kansas corporations. This joint sponsorship agreement involved forum-related business activities. American's indemnification claim is based on Hornady's responsibilities under this joint sponsorship agreement which required each sponsor to equally share the cost of the prairie dog shoot. The court accepts for the purposes of this motion that the

payment of any damages to the Flannagans arising out the auto accident during the prairie dog shoot is a cost encompassed by this sponsorship agreement. Therefore, the court concludes that American's indemnification claim, which is an attempt to enforce this joint sponsorship agreement to share all the costs associated with the prairie dog shoot, arises out of activities related to this forum. Finally, the court concludes that the exercise of personal jurisdiction over Hornady is reasonable. Hornady voluntarily entered into and enjoyed the benefits from a joint sponsorship relationship with two Kansas corporations. Hornady should have reasonably anticipated that it, as a joint sponsor, might have to answer to a cause of action brought in Kansas arising out of the activities occurring during a prairie dog shoot it jointly sponsored with two Kansas corporations. The plaintiff has met its burden of making a prima facie showing that this court has personal jurisdiction over Hornady.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to dismiss for lack of personal jurisdiction (Doc. # 72) is denied.

**IT IS SO ORDERED.**

---

**6.** Mr. Hornady admitted in his deposition that at the time of the accident, Mr. Bader was driving for the benefit of the group because he knew where the prairie dogs were.