**WORLD WIDE MINERALS LTD., World Wide Resource Finance Inc., Kazuran Corporation, and Nuclear Fuel Resources Corporation, Plaintiffs,**

v.

**The REPUBLIC OF KAZAKHSTAHN, The State Committee of the Republic of Kazakhstan on the Management of State Property, The National Atomic Company Kazatomprom, and Nukem, Inc., Defendants.**

No. 98 CV 1199–RCL.

United States District Court, District of Columbia.

Sept. 27, 2000.

Marshall Lee Miller, Baise Miller & Freer, P.C., Washington, D.C., for plaintiffs.

Carolyn B. Lamm, Frank Panopoulos, Francis A. Vasquez, Jocelyn A. Aqua, Judd C. Lawler, White & Case, LLP, Washington, D.C., for Nukem Inc.

Steven M. Colangelo, McGuire, Woods, Battle & Boothe, LLP, McLean, VA, for Republic of Kazakhstan, Committee of State Property and Privatization of the Ministry of Finance of the Republic of Kazakhstan.

Thomas B. Wilner, Sherman & Sterling, Washington, D.C., for Kazataomprom.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Plaintiffs World Wide Minerals Ltd., World Wide Resources Finance Inc., Kazuran Corporation, and Nuclear Fuel Resources Corporation (hereinafter "World Wide") brought suit over a contract dispute with the Republic of Kazakhstan concerning the mining and export of uranium. After the filing of the Complaint and First Amended Complaint numerous motions to dismiss were filed by the defendants. Most recently, the plaintiffs have requested Leave to File Second Amended Complaint. The defendants, the Republic of Kazakhstan, the State Committee of the Republic of Kazakhstan on the Management of State Property, the National Atomic Company Kazatomprom, and Nukem Inc., have opposed this motion and moved to dismiss. Upon consideration of these motions, the corresponding replies, the entire record herein, and the relevant law, the Court has determined that:

1. Plaintiff World Wide's Motion for Leave to File Second Amended Complaint is denied for futility.

2. As to defendants the Republic of Kazakhstan, the State Committee on the management of State Property, and Kazuran Corporation (hereinafter Kazakhstan) the claims of plaintiff World Wide are barred by the act of state doctrine. Therefore Kazakhstan's motion to dismiss is granted.

3. As to defendant Nukem, the Court lacks personal jurisdiction, and therefore grants defendant Nukem's motion to dismiss.

## BACKGROUND

After gaining independence from the Soviet Union in 1991, Kazakhstan began to seek foreign investment. Among the areas of interest to foreign companies were the northern and southern uranium mines of Kazakhstan. In June of 1996, World Wide Minerals Ltd., a Canadian corporation, submitted a proposal for the management of the northern mines complex in Kazakhstan. World Wide was simultaneously negotiating with the Kazakhstan Joint Stock Company of Atomic Power, Engineering, and Industry (KATEP) for the right to export and sell uranium from Kazakhstan.

On July 2, 1996, World Wide and KATEP agreed on the points of negotiation. They called for good faith negotiations on the issue of marketing the uranium. No final agreement to market the uranium was ever reached.

On October 7, 1996, Kazakhstan and World Wide entered into the Management Agreement. Under this agreement, World Wide took over the state controlled holding company for the northern mines com-

plex. World Wide committed to paying the debt of the holding company, some 5 million dollars. This agreement indicated that an export license would be required for World Wide to sell the uranium. *See* Proposed Second Am.Compl., Ex. 1, Management Agreement, Schedule 2, ¶ 2.3. World Wide was entitled to terminate the agreement if the license was not received by December 16, 1996. This deadline was extended to March 16, 1997. World Wide never received the export license, but did not suspend activities until April 1997.

On March 25, 1997 World Wide, through its wholly owned subsidiary World Wide Resource Finance Inc., entered into the Pledge Agreement with the State Committee of Kazakhstan. This agreement secured the loans of the Management Agreement. Under Article 19 of the Pledge Agreement, the parties indicated that any disputes would be addressed first by negotiations, and then by arbitration under UNCITRAL. Paragraph 19.5 provided that the parties would not be restricted in their right to settle disputes in court. That paragraph also provides that Kazakhstan waives immunity "for the purposes of the United States Foreign Sovereign Immunities Act of 1976 in any action or proceedings to which such Act applies."

On January 15, 1997, World Wide contracted with Nuclear Fuel Resources Inc., (NFR) of Colorado to market uranium from the northern mines. NFR and World Wide then entered into an agreement to provide uranium to Consumer's Energy, a Michigan corporation, on March 27, 1997. When the export license was not issued World Wide could not perform its duties under the contract. As a result of the failure to obtain the export license, World Wide suspended operations at the Northern Mines. Kazakhstan informed World Wide that it would not be able to grant an export license because of an earlier agreement with Nukem Inc., a U.S. company, for exclusive marketing of the uranium. This agreement had been kept confidential. In July of 1997, Nukem took over the failed contract with Consumer's Energy. On August 1, 1997, Kazakhstan terminated the northern mines management agreement. Plaintiffs filed suit, alleging breach of contract, conspiracy, violations of the RICO statute and, in the proposed second amended complaint violations of the Sherman Act.

## ANALYSIS

■■■ The Plaintiff requested leave to file a second amended complaint. Leave to amend pleading should be given when justice so requires. *See Firestone v. Firestone,* 76 F.3d 1205 (D.C.Cir.1996). The decision to allow or deny amendment is firmly within the court's discretion. *Id.* It is proper to deny leave for amendment if the amendment would be futile. *See Graves v. United States,* 961 F.Supp. 314 (D.D.C.1997). Futility is determined by whether or not the amended complaint would survive a motion to dismiss. *Id.* For reasons explained more fully below, the second amended complaint would be futile.

### I. Kazakhstan

#### A. FSIA and Minimum Contacts

■■■ The Republic of Kazakhstan is a foreign sovereign nation. Foreign sovereigns traditionally have enjoyed immunity from suit in courts of the United States. The Foreign Sovereign Immunities Act ("FSIA") of 1976 lays out the conditions of immunity. FSIA is the sole basis for jurisdiction over foreign nations. *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Instrumentalities of the State also have immunity from suit under FSIA. Both the State Committee of the Republic of Kazakhstan on the Management of State Property and the National Atomic Company Kazatomprom, meet the definition of instrumentalities of state under 28 U.S.C. § 1603(b)(2). The defendants maintain that the exceptions to FSIA do not apply and argue that a minimum contacts test is necessary.

In *Flatow v. Islamic Republic of Iran,* 999 F.Supp. 1 (D.D.C.1998), this court concluded that the minimum contacts test was not required when deciding jurisdictional issues concerning foreign sovereigns. *See Flatow,* 999 F.Supp. at 21. In *Flatow,* this court stated that the traditional minimum contacts test was subsumed in the exceptions to FSIA. *Id.* This ruling drew on the Supreme Court's suggestion that a foreign state might not be a "person" for . due process considerations. *See Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 619, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (citing *South Carolina v. Katzenbach,* 383 U.S. 301, 323–24, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966)). Since *Flatow,* this circuit has raised the issue but not decided it. *See Creighton Limited v. Government of the State of Qatar,* 181 F.3d 118, 124 (D.C.Cir. 1999). Consistent with the decision in *Flatow,* we find that no minimum contacts analysis is required concerning defendants the Republic of Kazakhstan, the State Committee of the Republic of Kazakhstan on the Management of State Property, and the National Atomic Company Kazatomprom. *See Flatow,* 999 F.Supp. at 21. The jurisdictional analysis instead depends on the presence or absence of one of the exceptions to FSIA. *Id.*

In this case, World Wide alleges that Kazakhstan waived its immunity in the "Pledge Agreement." In the alternative, World Wide argues that the acts of Kazakhstan qualify for the commercial activities exception to the FSIA. 28 U.S.C. § 1605(a)(2). Kazakhstan disputes these points and, in addition, argues that the act of state doctrine applies. These issues are discussed in turn below.

**B. Waiver of Immunity under FSIA**

■ FSIA provides that a sovereign may be sued if it has "waived its immunity either explicitly or by implication[.]" 28 U.S.C. § 1605(a)(1). World Wide claims that Kazakhstan explicitly waived its immunity in the "Pledge Agreement." The waiver provision of FSIA is to be interpreted narrowly, and it must be clear the foreign state intended to waive its immunity. *See Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 444 (D.C.Cir.1990).

**1. The Pledge Agreement**

■ The parties entered into the "Pledge Agreement" to secure various loans required under the management agreement. Article 19 of the "Pledge Agreement" provides for dispute resolution mechanisms. If negotiations fail, the parties have the option to arbitrate but are not required to do so. *See* Proposed Second Am.Compl., Ex. 2, art. 19.5. The waiver clause specifically indicates that the waiver is to apply to FSIA. *Id.* The dispute at hand involves all of the contracts between the parties and therefore the dispute resolution requirements of the "Pledge Agreement" are applicable here.

Defendant Kazakhstan argues that the waiver is void since the agreement is between Kazakhstan and World Wide Financial Resources, a British Virgin Islands corporation. Kazakhstan claims that since article 19.5 allows that the parties may sue in their jurisdictions, it was not on notice that it would be sued in the United States. Article 19.5 does allow that the parties may bring suit in court of the jurisdiction of each party, but goes on to waive immunity in any jurisdiction. *See* Proposed Second Am.Comp., Ex. 2, art. 19.5. Article 19.5 concludes by stating that the waiver is intended specifically for jurisdictions in which FSIA is applicable. *Id.*

The fact that World Wide Fincorp is a British Virgin Islands company is not determinative in this case. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 490, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) (holding that FSIA did not bar actions brought by foreign plaintiffs). The language of the waiver makes the United States the only possible jurisdiction to which it could apply. Therefore, this court holds that Kazakhstan intended to waive immunity to suit.

The finding that Kazakhstan waived its immunity to suit renders irrelevant discus-

sion of whether or not the activities of Kazakhstan qualify as commercial activity under FSIA. However, Kazakhstan has also raised the act of state doctrine as a defense and this requires further examination.

### C. Act of State Doctrine

 The act of state doctrine bars consideration of claims when the resolution of a case turns on the legality or illegality of official action taken by a foreign sovereign in its own territory. *See W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp.,* 493 U.S. 400, 406, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). The rule is connected to the domestic separation of powers and intended to avoid burdening the conduct of foreign affairs. *See W.S. Kirkpatrick & Co., Inc.,* 493 U.S. at 404, 110 S.Ct. 701. Under the doctrine, "the act within its own boundaries of one sovereign State ... becomes ... a rule of decision for the courts of this country." *Id.* at 406, 110 S.Ct. 701 (quoting *Ricaud v. American Metal Co.,* 246 U.S. 304, 310, 38 S.Ct. 312, 62 L.Ed. 733 (1918)). The party raising the act of state defense has the burden of establishing the facts required under the doctrine. *See Riggs Nat'l Corp. & Subsidiaries v. Commissioner of the I.R.S.,* 163 F.3d 1363, 1367 & n. 5 (D.C.Cir. 1999) (citing *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1026 & n. 4 (6th Cir.1990)). The doctrine does not demonstrate a lack of jurisdiction but rather functions as a doctrine of abstention. *Id.* (citing *In re Minister Papandreou,* 139 F.3d 247, 256 (D.C.Cir.1998)).

Kazakhstan has raised the act of state doctrine as a defense. The defendants claim that in order to give relief this court must find invalid the denial of the export license and other governmental enactments.

Kazakhstan has demonstrated that granting World Wide relief would require a judgment on the acts of a sovereign state. World Wide repeatedly indicates that its damages were caused by the inability to obtain an export license for uranium and the nationalization of property, *See* Proposed Second Am.Compl., ¶¶ 65, 66, 76, 82. The regulations regarding the issuance of export licenses were specifically enacted by Kazakhstan in the interests of international and national security. *See* Republic of Kazakhstan's Motion to Dismiss The Am.Compl., Ex. 10. If liability were attributed to Kazakhstan for the alleged damages suffered by World Wide, Kazakhstan would be faced with a judgment that designated its denial of the export license as invalid. *See Mol, Inc. v. Peoples Republic of Bangladesh,* 572 F.Supp. 79, 85 (D.Or.1983) (holding that denial of an export license cannot be examined under the act of state doctrine). The same is true of a judgement concerning the alleged nationalization of property. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 433, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (holding that the seizure of privately owned property could not be examined because of the act of state doctrine).

World Wide claims that it only seeks investigation into the conspiracy against it. World Wide maintains that the facts here are similar to those in *W.S. Kirkpatrick,* and therefore the ruling in that case should guide the decision.

In *W.S. Kirkpatrick,* the Supreme Court considered the application of the act of state doctrine to a claim for damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961. *See W.S. Kirkpatrick,* 493 U.S. at 402, 110 S.Ct. 701. The plaintiff claimed that the defendant, a private corporation, had bribed Nigerian officials in order to obtain a contract. *Id.* The Court in *W.S. Kirkpatrick* held that the act of state doctrine did not apply because the validity of the contract was not at issue. *Id.* at 409, 110 S.Ct. 701.

In contrast, the validity of the contract is at issue in this case. Unlike the facts in *W.S. Kirkpatrick* the defendant here is a foreign sovereign, not a private company. To investigate the conspiracy we must examine the contracts with Nukem, since these led to the denial of World Wide's

export license. These contracts were based on the internal laws and decrees of the Republic of Kazakhstan. Kazakhstan would be faced with an investigation directly concerning its governmental acts. Investigation of the claims against Kazakhstan would be in direct conflict with the ruling in *W.S. Kirkpatrick. See W.S. Kirkpatrick,* 493 U.S. at 406, 110 S.Ct. 701.

■ By way of comparison the act of state doctrine would not bar claims against Nukem because the situation would be analogous to *W.S. Kirkpatrick.* If the court allowed such damages its findings might suggest that the contract was invalid, but Kazakhstan's governmental decrees would not be directly implicated. Here however, the claim for damages is against Kazakhstan, thus involving the legality of the governmental actions. As such, this court cannot consider any of the claims against Kazakhstan or its instrumentalities due to the act of state doctrine.

## II. *Nukem*

■ The jurisdictional allegations against defendant Nukem, raise issues separate from the jurisdictional questions involving the other defendants. Defendant Nukem is a New York corporation with its principal place of business in Connecticut. Plaintiff World Wide asserts several grounds of jurisdiction. First, that Nukem satisfies the D.C. long arm statute and meets the requirements of due process. Second, that the Court has jurisdiction under the Clayton Act, 28 U.S.C. § 1391. Third, that jurisdiction is proper under the Federal Rico Statute, 18 U.S.C. § 1965, and finally that the court has conspiracy jurisdiction. The court finds these arguments without merit.

As an initial matter, plaintiff World Wide raises few allegations in the amended complaint specifically against defendant Nukem. *See* Amended Complaint ¶ 6 (alleging personal jurisdiction over Nukem due to meetings at the Republic of Kazakhstan Embassy), ¶ 13 (alleging that Nukem conducts business in the District of Columbia by meeting with various officials

of the U.S. and Kazakhstan). In various responses filed by World Wide, and the proposed Second Am.Comp., World Wide has repeated these allegations and added five new contacts with the District of Columbia. World Wide alleges that:

1. Nukem publishes advertising in the district.

2. Subscribers to Nukem's trade publication reside in the district.

3. Nukem is a member of various trade organizations which hold conferences in the District of Columbia.

4. Nukem incorporated and serves on the board of directors of the American Uzbekistan Chamber of Commerce in district.

5. Nukem, represented by Mr. James C. Cornell, signed the U.S.—Russia Highly Enriched Uranium agreement.

For the reasons discussed below, these contacts do not give this court jurisdiction over Nukem.

### A. *The "Government Contacts" Exception to Personal Jurisdiction*

■ The "government contacts" exception excludes from jurisdictional consideration a defendant's contacts with federal instrumentalities. *See Mallinckrodt Med. Inc. v. Sonus Pharm., Corp.,* 989 F.Supp. 265, 271 (D.D.C.1998). This exception has arisen from the District of Columbia's unique character as the home of the federal government. *Id.* Courts have construed the exception to extend to non-resident contact with trade associations located with the District of Columbia. *See Investment Co. Inst. v. United States,* 550 F.Supp. 1213 (D.D.C.1982).

■ Application of this exception to Nukem ends consideration of several jurisdictional allegations. Any of the meetings with governmental officials would be excluded under the doctrine. *See Mallinckrodt,* 989 F.Supp. at 271. Courts have refused to extend this exception to embassy meetings when the non-resident defen-

dant was pursuing a proprietary interest. *See Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 74–76 (D.D.C.1992). Therefore, under the government contacts exception, this Court excludes from consideration meetings with governmental officials in the District of Columbia, and the signing of the bi-lateral agreement on uranium. However, the alleged meetings at the Republic of Kazakhstan Embassy will be considered.

■ Nukem's membership in a trade organization also qualifies as "government contacts", under the *Investment Co. Institute v. United States,* 550 F.Supp. 1213 (D.D.C.1982). The Court in that case noted, "[I]t would surely come as a surprise to the members of the many trade associations having offices here that their membership counted as intrastate business for jurisdictional purposes." *Investment Co. Institute v. U.S.,* 550 F.Supp. 1213, 1217 & n. 6 (D.D.C.1982). The same applies here.

### B. D.C. Long Arm Statute

■ World Wide has invoked the "transacting business" clause of the D.C. Long Arm statute, D.C.Code § 13–423(b). To obtain personal jurisdiction over a non-resident defendant under § 13–423(b), a plaintiff must assert three requirements with specificity. First, the non-resident defendant must have "transacted business" within the district. Second, the contact must give rise to the claim. Third, the assertion must be consistent with due process considerations.

### 1. Transacting Business

■ A corporation transacts business within the District only if the business is of a "substantial character". *See Armco Steel Co., L.P. v. CSX Corp.,* 790 F.Supp. 311, 320 (D.D.C.1991) (citing *Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182, 1195 (D.D.C.1984)). Trade organizations representing business interests have been found to lack the required level of involvement. *See Armco,* 790 F.Supp. at 320. Lacking a showing that the contact was "integral to the con-

duct of ... business," the contact failed to establish that the defendant had transacted business within the district. *Id.*

The American Uzbekistan Chamber of Commerce seems to be the type of trade organization considered in *Armco.* World Wide alleges that the Chamber of Commerce is a "non-profit encouraging international trade with Central Asia." *See* proposed Second Am.Compl. ¶ 10e. This generalized statement does not indicate that the organization is a contact of "substantial character" for Nukem. *Id.* The involvement of Nukem in the Chamber of Commerce, therefore, fails to satisfy the transacting business requirement.

### 2. "Arising From"

■ D.C.Code Ann. § 13–423(b) requires a significant connection between the claim and alleged contact with the forum. This court will closely adhere to this "arising from" requirement. *See Coalition on Sensible Transp., Inc. v. Dole,* 631 F.Supp. 1382 (D.D.C.1986).

The remaining World Wide allegations fail to demonstrate a sufficient connection between the injury and the contacts to meet the "arising from" requirement.

World Wide alleges that meetings contributing to the conspiracy took place at the Kazakhstan Embassy. World Wide simply states that there were several such meetings without giving specific dates. *See* Proposed Second Am.Compl., ¶ 10. In earlier pleadings, World Wide had alleged that meetings took place in December 1997. World Wide claims that the injury occurred either on April 30, 1997 or May 6, 1997, when Kazakhstan indicated that no export license would be granted. The contact therefore took place after the alleged injury occurred. The Long Arm statute, D.C.Code § 13–423(b), requires that the claim arise from the contacts alleged. It would be impossible for the injury to arise from a contact occurring months later. Therefore, this court cannot exercise personal jurisdiction over Nukem on the basis of the alleged meetings at the embassy.

■ The other contacts alleged by World Wide also fail the "arising from" test. Publishing advertisements or mailing trade magazines in the forum might not even provide the needed minimum contacts. *See Volkswagen De Mexico v. Germanischer Lloyd,* 768 F.Supp. 1023 (holding that advertisements that reach the district do not establish personal jurisdiction). Even granting that these contacts meet the requirements of due process they cannot meet the requirements under § 13–423(b). The presence of subscribers to a trade magazine cannot be connected to the creation of a conspiracy to breach a contract that was signed and performed in Kazakhstan. The same is true of advertisements in area newspapers. The alleged injury therefore cannot arise from these contacts.

For the reasons above this court lacks personal jurisdiction over Nukem under the D.C. Long Arm Statute.

## C. Anti-trust Claims as an Alternative Basis of Jurisdiction

■ The claims under the Sherman and Clayton Acts are new additions to World Wide's allegations, appearing for the first time in the Proposed Second Amended Complaint. World Wide cites these acts as an alternative grounds for jurisdiction. Presumably, although it is not expressly indicated, World Wide hopes that the national service provisions of the Clayton Act will give this court jurisdiction over Nukem. This approach has been expressly rejected in recent decisions. *See GTE New Media Serv. Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C.2000). In *GTE,* the defendant argued that the nation-wide service provisions of the Clayton Act provided a basis for personal jurisdiction in every district of the United States. *See GTE,* 199 F.3d at 1350. The court found that the Clayton act required proper venue in order to satisfy jurisdictional requirements. *Id.*

■ The venue analysis requires that this court perform the local contacts test under the applicable long-arm statute. *See In re Vitamins Antitrust Litigation,* 94 F.Supp.2d 26, 31 (D.D.C.2000). As shown above, the allegations by World Wide do not satisfy the requirements of the long-arm provision, and therefore, this court does not have jurisdiction under the Clayton Act.

## D. RICO as an alternative basis of Jurisdiction

■ Plaintiffs also contend that jurisdiction may be based on the Federal RICO statute, 18 U.S.C. § 1965. A court in this jurisdiction has held that the RICO service provision does provide for jurisdiction based on a national contacts test as opposed to a local contacts test. *See Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 71 (D.D.C.1992). This ruling recognized that other jurisdictions have used a national contacts test. *See Omni Video Games, Inc. v. Wing Co., Ltd.,* 754 F.Supp. 261, 263 (D.R.I.1991); *University Savings Assn. v. Bank of New Haven,* 765 F.Supp. 35, 36 (D.Conn.1991); *American Trade Partners L.P. v. A–1 Int'l Importing Enter. Ltd.,* 755 F.Supp. 1292, 1302 (E.D.Pa. 1990). The Court in *Dooley* also recognized that this circuit has not directly addressed the issue. *See Dooley,* 786 F.Supp. at 71.

This court declines to follow *Dooley.* In *United States v. Dyncorp, Inc.,* 924 F.Supp. 292, 297 (D.D.C.1996), the court conducted a minimum contacts due process analysis despite the nationwide service provision in the False Claims Act. It is true that each statute must be interpreted separately. *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) ("analysis of special venue provisions must be specific to the statute"). However, a comparison of the Clayton Act service provisions and the RICO statute provisions does show a substantial similarity. *Compare* 18 U.S.C. § 1965(a), (d) *with* 28 U.S.C. § 1391(b), (c). The ruling in this circuit in *GTE New Media Services,* 199 F.3d 1343 (D.C.Cir.2000), on the Clayton

Act postdates *Dooley,* and suggests that a national contacts test might not apply. In addition, there is strong support to reject nationwide jurisdiction in the Second Circuit. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 70–71 (2nd Cir.1998).

As the Second Circuit noted, the service provisions of the RICO statute must be read together in order to be coherent. *See PT United Can Co., supra,* 138 F.3d at 70. First, 1965(a) gives personal jurisdiction over defendants when they reside, have an agent, or transact affairs in the district. This is analogous to having minimum contacts within the district. Then 1965(b) provides for nationwide jurisdiction over *other parties* not residing in the district. 1965(c) provides for service of subpoenas. Finally, 1965(d) provides for nationwide service of "all other process". This clause should not invalidate the division in (a) and (b) between resident and non-resident defendants. The statute seems to provide for nationwide jurisdiction only when one of the defendants has minimum contacts with the forum. This court rejects the notion that the federal RICO statute would provide a basis for nation wide jurisdiction. Since none of the defendants are subject to personal jurisdiction in the District of Columbia the RICO statute does not allow this court to assert jurisdiction.

### E. Conspiracy Jurisdiction

■■■■■ Finally, World Wide alleges that Nukem is amenable to the court's power under conspiracy jurisdiction. Most courts utilize conspiracy jurisdiction warily and require that a plaintiff "plead with particularity the conspiracy as well as the overt acts within the forum." *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C.Cir. 1997). For conspiracy jurisdiction to function there must be a substantial act within the forum. *See Jungquist, supra,* 115 F.3d at 1031.

World Wide names as Nukem's co-conspirators the embassy officials. The only overt act alleged with particularity by World Wide involving the conspiracy is the meeting at the embassy. World Wide fails to explain how this meeting taking place after the crucial incidents had occurred could have been used to "plan" the conspiracy. All of the other acts of the conspiracy took place outside of the District of Columbia. Consequently, a denial of personal jurisdiction under this theory is warranted.

### III. Conclusion

■■■■ For the reasons set forth above the proposed second amended complaint would not survive a motion to dismiss. Therefore, the Proposed Second Amended Complaint is futile. Moreover, the defendants' motions to dismiss the Amended Complaint shall be granted in a separate order filed this date.

### ORDER

Upon consideration of the parties' motions, their oppositions and replies, and the entire record in this case, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that the plaintiff's motion for leave to File Second Amended Complaint [54–1] is DENIED, and

FURTHER ORDERED that Republic of Kazakhstan, State Committee for the Republic of Kazakhstan, and Kazatomprom's motion to dismiss under the act of state doctrine is GRANTED [21–1], and that defendant Nukem's motion to dismiss for lack of personal jurisdiction is GRANTED [27–1].

ORDERED that Kazakhstan's motion to dismiss for lack of personal jurisdiction [22–1] is DENIED as moot. Kazakhstan's motion to dismiss for failure to state a claim [23–1] is DENIED as moot.

Kazakhstan's motion to stay proceedings and compel arbitration [24–2] is DENIED.

Kazatomprom's motion for joinder of motions [25–1] is DENIED as moot.

Kazatomprom's motion to dismiss [26–1] under F.R.C.P. 12(b)(1), (2) are DENIED as moot.

Nukem's motion to file confidential material under seal [29–1] is GRANTED.

Nuclear Fuel Resources motion to strike affidavit [33–1] is DENIED as moot.

World Wide Minerals motion for leave to take jurisdictional discovery [34–1] is DENIED.

Nukem's motion to seal confidential material [46–1] is GRANTED.

World Wide's motion [53–1] to remove from public record and place under seal the plaintiff's motion to strike submission is GRANTED.

This case now stands DISMISSED.

SO ORDERED.