**MULTI–MEDIA INTERNATIONAL, LLC, Plaintiff,**

v.

**PROMAG RETAIL SERVICES, LLC, Don Sturtz, Joe Peters and John Does Numbers 1–10, Defendants.**

**No. CIV.A. 04–2119–GTV.**

United States District Court, D. Kansas.

Nov. 2, 2004.

---

**1026**

Maryteresa Doyle, Shawnee Mission, KS, for Plaintiff.

### MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Multi–Media International, LLC ("MMI"), filed this lawsuit against Defendants Promag Retail Services, LLC, Don Sturtz, Joe Peters and John Does Numbers 1–10, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as state claims of fraud, negli-

gent misrepresentation, defamation, unjust enrichment, and conversion.

This action is before the court on Defendants' motion to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), improper venue pursuant to Fed.R.Civ.P. 12(b)(3), and failure to state a claim upon which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6) (Doc. 2). For the reasons set forth below, Defendants' motion is granted in part, and denied in part.

### I. FACTUAL BACKGROUND

Plaintiff, a Nevada limited liability company, is a magazine publisher with its principal place of business in Kansas.[1] Promag, a California limited liability company, is engaged in the business of billing and collecting Retail Display Allowances ("RDAs") on behalf of magazine retailers. RDAs are payments magazine publishers make to magazine retailers to receive, among other benefits, a more prominent display of their magazines. RDA payments are only due for copies of the magazines actually sold by the retailer, as retailers may return unsold copies of magazines to a publisher for credit. Typically, the RDA amount is ten percent of the magazine's cover price.

Between September 2000 and March 2004, Plaintiff alleges that Promag, through Defendants Peters and Sturtz, President and Vice President of Promag, respectively, submitted multiple inflated claims for RDA payments on behalf of their client-retailers. Plaintiff alleges that these RDA claim forms submitted by Promag did not reflect the actual number of magazines sold by the particular retailer. Rather, Plaintiff states that the forms reflected the amount of magazines that the retailer had not yet returned to Plaintiff as

---

1. Plaintiff's complaint also states that it has offices in New York.

of the date Promag submitted the claim. Plaintiff also states that on several occasions Promag submitted duplicate claims from retailers purportedly represented by Promag, when the retailers were actually submitting and receiving RDA payments directly from Plaintiff's national distributor. Finally, Plaintiff claims that Promag, through Defendants Peters and Sturtz, made extortionate threats to force MMI to pay RDA claims that were not properly due.

## II. DISCUSSION

### A. Personal Jurisdiction

#### 1. Standard of Review

Defendants request the court to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2). In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998) (citation omitted). Where, as here, the court does not hold an evidentiary hearing, and the motion rests on the plaintiff's complaint and affidavits submitted by the parties, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* (citation omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (further citation omitted).

Plaintiff's complaint invokes federal jurisdiction under RICO. "'Before a federal court can assert personal jurisdiction over a defendant in a federal question case', the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant' and (2) 'whether the exercise of jurisdiction comports with due process.'" *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir.1997)).

#### 2. Does § 1965(d) of RICO Authorize Nationwide Service of Process?

■ As a threshold matter, the court notes that it asked both parties to submit additional briefing with respect to Defendants' personal jurisdiction challenge. Initially, Plaintiff analyzed the personal jurisdiction issue under the Kansas Long Arm Statute, K.S.A. § 60–308(b), and the Fourteenth Amendment's due process clause. But courts in this district, including this court, have construed 18 U.S.C. § 1965(d) to authorize nationwide service of process.[2]

---

**2.** Other district courts have also concluded that § 1965(d) is a nationwide service of process provision which authorizes personal jurisdiction. *See e.g., BankAtlantic v. Coast to Coast Contractors Inc.,* 947 F.Supp. 480, 485 (S.D.Fla.1996); *Dooley v. United Techs. Corp.,* 786 F.Supp. 65, 70 (D.D.C.1992); *Omni Video Games, Inc. v. Wing Co., Ltd.,* 754 F.Supp. 261, 263 (D.R.I.1991); *Bridge v. Invest Am., Inc.,* 748 F.Supp. 948, 950 (D.R.I.1990); *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,* 644 F.Supp. 580, 585 (E.D.Mich.1986); *Clement v. Pehar,* 575 F.Supp. 436, 438 (N.D.Ga.1983). *But see Hawkins v. Upjohn Co.,* 890 F.Supp. 601, 606 n. 8 (E.D.Tex.1994) ("This reading of section 1965(d) should not be adopted because it is contrary to the plain meaning of the words used."); A. Darby Dickerson, *Curtailing Civil RICO's Long Reach: Establishing New Boundaries for Venue and Personal Jurisdiction Under 18 U.S.C.1965,* 75 Neb. L.Rev. 476, 514–15 (1996) (arguing that only § 1965(b) can be utilized to establish personal jurisdiction).

*Headwear, U.S.A., Inc. v. Stange,* 166 F.R.D. 36, 38 (D.Kan.1996); *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship,* 817 F.Supp. 896, 898 (D.Kan.1993); *Merchants Nat'l Bank v. Safrabank,* No. 90–4194–R, 1991 WL 173781, at *1 (D.Kan. Aug.28, 1991). *But see NL Indus., Inc. v. Gulf & W. Indus., Inc.,* 650 F.Supp. 1115, 1137 (D.Kan.1986) (observing that "it is not clearly established that § 1965(d) affords nationwide jurisdiction"). " 'When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction,' " and the court is left to determine whether jurisdiction comports with the Fifth Amendment's due process principles. *Peay,* 205 F.3d at 1210, 1212 (citation omitted). Thus, the court requested that the parties submit briefing on the applicability of RICO's nationwide service of process provision and the Fifth Amendment's due process constraints on personal jurisdiction.

In response to this request, Defendants suggest that § 1965(d) does not confer nationwide service of process for personal jurisdiction purposes, and urges the court to depart from its prior ruling in *Headwear.* Instead, Defendants submit that in certain circumstances § 1965(b) provides for nationwide service of process for personal jurisdiction purposes, but that those circumstances do not apply to this case. Defendants thus maintain that the court must analyze the personal jurisdiction challenge under the Kansas long arm statute and the Fourteenth Amendment's due process clause. The court will address Defendants' contentions.

Section 1965 of RICO contains special provisions for venue and service of process. It states:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpoena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a)-(d).

The court recognizes that a split of authority exists among the Circuit Courts of Appeal as to whether § 1965(b) or (d) provides for nationwide service of process.[3] The Fourth and Eleventh Circuits view

---

**3.** The Tenth Circuit has not ruled on the issue.

§ 1965(d) as authorizing nationwide service of process. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir.1997) ("Section 1965(d) authorizes service of process 'in any judicial district in which such person ... is found.' "); *Republic of Panama*, 119 F.3d at 942 (same). As long as the defendant is served process under RICO and Fifth Amendment due process concerns are satisfied, these courts find that personal jurisdiction exists. *See ESAB Group, Inc.*, 126 F.3d at 627 ("Because [defendants] have been validly served ..., in personam jurisdiction over them is established, provided that such jurisdiction comports with the Fifth Amendment."); *Republic of Panama*, 119 F.3d at 942 ( "Because the ... defendants are domestic corporations doing business in this country, the statutory basis for personal jurisdiction ... is satisfied.").

On the other hand, the Second, Seventh, and Ninth Circuits view § 1965(b) as authorizing nationwide service of process. *PT United Can Co. Ltd., v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 70 (2d Cir.1998) (affirming district court's ruling that " § 1965(b), and not § 1965(d), governs the exercise of personal jurisdiction under RICO"); *Lisak v. Mercantile Bancorp. Inc.*, 834 F.2d 668, 671 (7th Cir.1987) (noting that " § 1965(b) creates personal jurisdiction by authorizing service"); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538–39 (9th Cir.1986) (discussing 1965(b)'s provisions for nationwide service in RICO suits). Moreover, the Ninth and Second Circuits have observed that nationwide service of process under § 1965(b) is not without limitations. The Ninth Circuit, in *Butcher's Union Local No. 498*, stated that "merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." 788 F.2d at 539. The court held that "[f]or nationwide service to be imposed under section 1965(b),

the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id.*

In *PT United Can Company*, the Second Circuit agreed with the Ninth Circuit, concluding that " § 1965 does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." 138 F.3d at 71. Notably, the Second Circuit provided a thorough analysis of § 1965's sections and expressly rejected the Eleventh Circuit's "conclusory" view that § 1965(d) authorizes nationwide service of process. *Id.* at 70–72. Examining § 1965's sections together, the court observed:

First, § 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.

Second, § 1965(b) provides for nationwide service and jurisdiction over "other parties" not residing in the district, who may be additional defendants of any kind, including co-defendants, third party defendants, or additional counterclaim defendants. This jurisdiction is not automatic but requires a showing that the "ends of justice" so require. This is an unsurprising limitation. There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first preference, as set forth in § 1965(a), is to bring the action where

suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora.

Next, § 1965(c) simply refers to service of subpoenas on witnesses. Thus, § 1965(d)'s reference to 'all other process,' means process other than a summons of a defendant or subpoena of a witness. This interpretation, one which gives meaning to the word 'other' by reading sequentially to understand 'other' as meaning 'different from that already stated in subsections (a)-(c),' gives coherent effect to all sections of § 1965, and effectively provides for all eventualities without rendering any of the sections duplicative, without impeding RICO actions and without unnecessarily burdening parties. We conclude that the natural reading given to § 1965(b) by the 9th Circuit in *Butcher's Union* and the district court here was correct, and that this conclusion is borne out by a complete reading of the statute, a course of action which has not been followed by the courts that have read § 1965(d) in isolation to reach the opposite conclusion.

*Id.* at 71–72.

■ After reviewing the relevant case law, the court concludes that it must overrule its prior position in *Headwear* that construed § 1965(d) as RICO's nationwide service of process provision.[4] The court is persuaded by the decisions in the Second and Ninth Circuit identifying § 1965(b) as RICO's national service of process provi-

sion and limiting its applicability to situations where: (1) a court possesses personal jurisdiction over at least one defendant; and (2) the "ends of justice" require a plaintiff to bring all the defendants before that court because no other district court possesses personal jurisdiction over all the defendants. Furthermore, the court observes that several other district courts have recently followed this construction of § 1965. *See World Wide Minerals Ltd. v. Republic of Kazakhstahn,* 116 F.Supp.2d 98, 108 (D.D.C.2000) (citing the Second Circuit's decision to conclude that RICO provides for "nationwide jurisdiction only when one of the defendants has minimum contacts with the forum"); *800537 Ontario Inc., v. Auto Enters., Inc.,* 113 F.Supp.2d 1116, 1127–28 (E.D.Mich.2000) (agreeing "with the Second and Ninth Circuits that § 1965(b) only authorizes 'nationwide service of process' upon other defendants if the court has personal jurisdiction over at least one defendant"); *Sadighi v. Daghighfekr,* 36 F.Supp.2d 267, 274 (D.S.C. 1999) (stating that the court would follow the Second Circuit's interpretation of § 1965 if it were not bound to follow Fourth Circuit precedent); *see also Hawkins,* 890 F.Supp. at 606 n. 8 (concluding that the defendants were subject to § 1965(b)'s nationwide service provision only "if one defendant before the court has the required minimum contacts with the forum state").

■ Following this approach, the court concludes that RICO's nationwide service of process provision, 18 U.S.C. § 1965(b),

---

4. The court also recognizes that the Tenth Circuit's decision in *Peay* overrules the "national contacts" approach relied on in *Headwear,* 166 F.R.D. at 38 (i.e., that when a federal statute provides for nationwide service of process, the only requirement for personal jurisdiction is that the plaintiff must show that the defendants have sufficient minimum

contacts with the United States). *Peay* expressly held that "due process requires something more," and outlined several factors a district court should consider in determining whether personal jurisdiction over a defendant satisfied the Fifth Amendment's due process limitations. 205 F.3d at 1211–13.

is inapplicable to the present case. The "ends of justice" requirement is not satisfied because Defendants are all subject to suit in California. Because RICO does not authorize nationwide service of process here, the court agrees with Defendants that it must determine whether the Kansas long-arm statute potentially confers personal jurisdiction by authorizing service of process, and then evaluate whether the exercise of jurisdiction satisfies due process. *See Springer v. Balough,* No. 00–5071, 2000 WL 1616246, at *1 (10th Cir. Oct.30, 2000) (stating that Fed.R.Civ.P. 4(k)(1)(A) directs courts to the state long-arm statute when a federal statute does not authorize nationwide personal jurisdiction).

### 3. Due Process Analysis

In Kansas, analyzing a motion to dismiss for lack of personal jurisdiction involves an inquiry as to: (1) whether the court has personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60–308(b); and (2) whether the exercise of such jurisdiction comports with due process. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1304 (10th Cir.1994). However, "these inquiries are for all intents and purposes the same because the Kansas long-arm statute ... has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." *Flannagan v. Bader,* 905 F.Supp. 933, 936

(D.Kan.1995) (citing *Thompson v. Chambers,* 804 F.Supp. 188, 195 (D.Kan.1992)). The court, therefore, proceeds directly to the constitutional issue. *Federated Rural Elec. Ins. Corp.,* 17 F.3d at 1304.

■ Because subject matter jurisdiction over Plaintiff's action is predicated on a federal question, rather than the diversity of the parties, the court's due process analysis focuses on the Fifth Amendment, and not the Fourteenth Amendment. *Peay,* 205 F.3d at 1210. As a practical matter, however, the inquiry is the same as courts have applied the Fourteenth Amendment's "minimum contacts" analysis to federal question cases.[5] *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C,* 186 F.Supp.2d 1158, 1161 (D.Kan.2002); *Packerware Corp. v. B & R Plastics, Inc.,* 15 F.Supp.2d 1074, 1077 (D.Kan.1998).

The due process clause permits the exercise of jurisdiction over a nonresident defendant "so long as there exist 'minimum contacts' between the defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The "minimum contacts" standard may be established by specific jurisdiction. In *OMI Holdings, Inc.,* the Tenth Circuit explained the requirements for establishing specific jurisdiction as follows:

---

**5.** The Tenth Circuit's decision *Peay* also supports this method of analysis. In *Peay,* the Tenth Circuit observed that the language in both amendments was "virtually identical" and that both amendments " 'were designed to protect individual liberties from the same types of government infringement.' " 205 F.3d at 1212 (citation omitted). Thus, the Tenth Circuit "discern[ed] no reason why the Fourteenth Amendment's fairness and reasonableness requirements 'should be discarded completely when jurisdiction is asserted un-

der a federal statute.' " *Id.* While the *Peay* decision listed several factors a court should consider when deciding if jurisdiction satisfies the Fifth Amendment's due process principles, *id.* at 1212–13, the court believes that the Tenth Circuit intended to apply the test only if a plaintiff utilizes a nationwide service of process provision. Even if the court were to apply the factors outlined in *Peay,* it would not change the outcome of the court's personal jurisdiction+ analysis.

Our specific jurisdiction inquiry is two-fold. First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted) (emphasis in the original). Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113, 107 S.Ct. 1026. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. *See id.*

149 F.3d at 1091.

In support of their position that jurisdiction does not lie in the District of Kansas, Defendants submitted the declaration of Defendant Peters. His declaration states that Defendant Promag is a California limited liability company with offices in Danville, California, and that the company does not have any officers, agents or employees in Kansas, does not conduct any

business in Kansas, and does not transact any of its affairs in Kansas. Moreover, Mr. Peters asserts that Promag has never entered into any express or implied contracts with Plaintiff. He claims that until January 2002, Promag sent all of its RDA claims to Plaintiff's national distributor, Kable News, whose offices are located in Illinois. In a footnote, Defendants' brief admits that it began mailing RDA claims to Plaintiff in Kansas beginning in January 2002 and continuing to the present. Defendants, however, emphasize that this occurred only at Plaintiff's insistence, after Plaintiff terminated its relationship with Kable News and started administering its own RDA claims in Kansas. Thus, Defendants argue that they did not purposely direct their activities toward Kansas, but their actions resulted from the unilateral acts of Plaintiff.

Plaintiff submitted the declaration of Clifton Pummill, the chief executive officer of MMI, in response to Defendants' motion to dismiss. Mr. Pummill states that although MMI is a Nevada limited liability company, with offices in New York, its principal place of business is in Lenexa, Kansas. Mr. Pummill asserts that MMI's Kansas office conducts all of the company's financial operations. This includes processing and paying all claims for payments, maintaining all corporate and accounting books, and printing and shipping all of its magazines. From January 2002 through the date of this action, Mr. Pummill states that MMI has administered its own RDA program from its Kansas offices.[6] As a result, Mr. Pummill declares that Defendants Sturtz and Peters submitted (by mail or facsimile) "literally thousands" of fraudulent RDA claims to MMI

---

**6.** Mr. Pummill acknowledges that Kable News handled the administration of MMI's RDA program from September 2000 through December 2001. But he adds that claims for RDA payments received by Kable News were forwarded to MMI for approval in Kansas, and once approved, Kable would make the payment and charge MMI in Kansas.

in Kansas,[7] and subsequently received "hundreds of thousands of dollars" from MMI's bank account in Kansas. Mr. Pummill also cites specific dates when Defendants Sturtz and Peters allegedly made extortionate threats to Promag due to unpaid RDA claims. In particular, Mr. Pummill claims that: (1) on April 16, 2001, Defendant Peters threatened to delist MMI's magazines during a telephone call placed in Kansas by Mr. Pummill and MMI's RDA manager, Mickey Doyle; (2) in a letter Promag sent to MMI in Kansas, dated September 16, 2003, Defendant Sturtz threatened to disclose false information to the retail community if MMI did not pay past-due RDA claims; and (3) on December 2, 2003, Defendant Sturtz sent an e-mail to Mr. Pummill in Kansas and threatened to disclose information to a major wholesaler if MMI did not make certain RDA payments.

■ The court holds that Plaintiff has established a prima facie case that personal jurisdiction exists in Kansas. The court agrees with Plaintiff that Defendants purposefully directed their activities in Kansas. By submitting RDA claims in Kansas and receiving payment from Plaintiff in Kansas, Defendants' affirmative conduct promoted the transaction of business within the state. Moreover, the quality and nature of Defendants' contacts shows that they should have anticipated being haled to the District of Kansas. The court concludes that the exercise of personal jurisdiction in Kansas will not offend " 'traditional notions of fair play and substantial justice.' " *Id.* (citation omitted).

### B. Venue

Defendants argue that this action should be dismissed on the basis of improper venue pursuant to Fed.R.Civ.P. 12(b)(3).

When a defendant challenges venue, the plaintiff has the burden of showing that venue is proper. *Etienne v. Wolverine Tube, Inc.*, 12 F.Supp.2d 1173, 1180 (D.Kan.1998). "Additionally, when multiple claims are plead, [sic] venue must be proper for each claim." *Gen. Bedding Corp. v. Echevarria*, 714 F.Supp. 1142, 1144 (D.Kan.1989) (citation omitted). Plaintiff responds to Defendants' argument by asserting that venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

In a civil action where jurisdiction is not based solely on diversity, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The court must therefore determine "whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." *Andrean v. Sec'y of the United States Army*, 840 F.Supp. 1414, 1422 (D.Kan.1993). This analysis does not require the court to decide where Defendants' activities were the most substantial. *Safrabank*, 776 F.Supp. at 541. Rather, the court's charge is to ascertain "if 'substantial' activities took place in Kansas" related to Plaintiff's claims. *Id.* Indeed, " '[i]f the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so.' " *Id.* (citation omitted).

Defendants maintain that their contacts with the State of Kansas—comprised of mailings, faxes, and one telephone conversation between Defendants in California and Plaintiff in Kansas-are insufficient to support venue in Kansas. Furthermore, Defendants assert that any violations of

---

7. To support this claim, the court notes that Plaintiff attached some RDA claim forms from 2002, 2003 and 2004 that Promag sent to MMI in Kansas.

RICO actually took place in California, where the alleged mailings and faxes were sent and the alleged threats were uttered. Plaintiff reasserts that the submission of fraudulent claims in Kansas and the receipt of threats in Kansas demonstrates that a substantial part of the events giving rise to its claims occurred in the District of Kansas.

■ The court concludes that venue in the District of Kansas is proper under § 1391(b).[8] The contacts in this case consist entirely of oral, written, and electronic communications between both parties. Even if it is true that a substantial part of the events giving rise to Plaintiff's claim occurred in California, it is equally true that a substantial part of the events surrounding Plaintiff's claim occurred in Kansas. *See Etienne,* 12 F.Supp.2d at 1181 (concluding that a substantial part of the relevant conduct took place in Kansas because "the primary events giving rise to this [breach of contract] action ... occurred by means of communications between ... two states," and "to the extent that [the] events occurred anywhere, they occurred almost as much in Kansas as in Alabama"); *Safrabank,* 776 F.Supp. at 541 (holding that venue was proper in Kansas because both of the defendants conducted many of their activities with the plaintiff through the mail, despite that fact that the defendants' activities may have been more substantial in California). The fact that Defendants directed their RDA collection services in Kansas provides a sufficient connection between Plaintiff's claims and this district. Accordingly, Defendants' motion to dismiss for improper venue is denied.

***

8. Because the court concludes that venue is proper under the general venue statute, the court need not reach whether venue is proper under RICO's special venue provision, 18 U.S.C.1965(a). *See Echevarria,* 714 F.Supp.

*C. Failure to State a Claim*

Defendants move to dismiss Plaintiff's RICO claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Defendants assert that Plaintiff's complaint fails to: (1) allege a distinct "person" and "enterprise" under 18 U.S.C. § 1962(c); and (2) satisfy the particularity requirement of Fed.R.Civ.P. 9(b).

### 1. Standard of Review

A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling him to relief under his theory of recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. *Id.;* Fed.R.Civ.P. 8(f). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### 2. Enterprise/Person Distinction

Defendants argue that Plaintiff's RICO claims are defective because Plaintiff fails to allege an "enterprise" distinct from the defendant "persons."

at 1144 (noting that section 1391(b)'s venue provisions are applicable to RICO claims because RICO's special venue provision is not exclusive).

■ Count One of Plaintiff's complaint alleges violations of RICO under 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(c) requires that "the 'person' and the 'enterprise' engaged in racketeering activities be different entities." *Bd. of County Comm'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir.1992) (citation omitted). This distinctness principle is satisfied if a plaintiff alleges that a corporate employee conducted a corporation's affairs through illegal means. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that."); *Ad–X Int'l, Inc. v. Kolbjornsen*, 97 Fed. Appx. 263, 266 (10th Cir.2004) (citations and internal citations omitted) ("Indeed, because the enterprise must be separate from the pattern of racketeering activity itself, ... and distinct from the person engaging in it, ... RICO requirements are most easily satisfied when the enterprise is a formal legal entity").

■ Plaintiff's complaint alleges that Defendant Promag is the "enterprise" under its § 1962(c) claim. Defendants contend that because Plaintiff has sued Defendants Promag, Sturtz and Peters, and named Defendant Promag as the "enterprise," Promag cannot be both the "enter-

prise" and a defendant "person" under the applicable RICO section. Defendants assert that this pleading deficiency necessitates dismissal of Plaintiff's RICO claims, or at a minimum, Promag should be dismissed as a defendant to Plaintiff's RICO claims in Counts 1 and 2 of its complaint.

In response, Plaintiff argues that it is clear from the complaint that Defendant Promag is the "enterprise," and Defendants Sturtz and Peters are the " 'persons' who are conducting or participating in the affairs of the enterprise through a pattern of racketeering activity." Plaintiff contends that Defendants Sturtz and Peters "took an otherwise legitimate entity ... and used it to perpetrate their scheme to fraudulently obtain funds by causing the enterprise (Promag) to submit false claims for the payment of funds that were not properly due and owing."

The court determines that Defendants' argument has merit. A review of Plaintiff's complaint indicates that Defendant Promag is alleged to be the "enterprise." Plaintiff's complaint, however, fails to clearly label Defendants Sturtz and Peters as the "persons" conducting the affairs of the enterprise. Instead, Plaintiff's complaint states at paragraph seventy-six: "The Defendants, ... each conducted or participated in, directly or indirectly, the affairs of a racketeering enterprise." A reasonable interpretation of paragraph seventy-six is that "The Defendants" includes Defendant Promag, in addition to both Defendants Sturtz and Peters. And as Defendant correctly points out, Defendant Promag cannot serve the dual role as a defendant and the enterprise in an action based on § 1962(c). *See Miranda Rodriguez v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991) (stating that "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise") (citation omitted); *Edgington v. R.G. Dickin-*

*son & Co.*, No. 90–1274–C, 1992 WL 223822, at *9 (D.Kan. Aug.7, 1992) ("For purposes of § 1962(c), the defendant cannot be the enterprise; the 'person' and enterprise' must be distinct. Having alleged that R.G. Dickinson is the enterprise, the plaintiffs are unable to make it a defendant to the same § 1962(c) claim.") (internal citation omitted). Indeed, § 1962(c) "does not relate to corporate or enterprise liability." *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir.1987) (citations omitted).

The court therefore dismisses Plaintiff's RICO claims against Defendant Promag.[9] In addition, the court observes that Plaintiff's complaint premises subject matter jurisdiction against Defendants based solely on federal question jurisdiction arising out of RICO. Because the court dismisses all RICO claims against Defendant Promag, it is necessary for Plaintiff to amend its complaint in order to assert a proper jurisdictional basis for the remaining state law claims against Defendant Promag. The court also suggests that Plaintiff clarify in its complaint the specific "persons" under its RICO claims. Plaintiff may amend its complaint as a matter of course, as no responsive pleading has been filed in this case. Fed.R.Civ.P. 15(a). Accordingly, the court grants Plaintiff twenty days from the date of this order to file an amended complaint.

### 3. Particularity Requirement

Defendant next argues that Plaintiff's complaint fails to adequately allege with particularity each element of a RICO violation and its predicate acts of racketeering.

A successful RICO claim must state four elements: " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir.2002) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Moreover, Fed.R.Civ.P. 9(b) requires plaintiffs to "sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the 'threat of treble damages and injury to reputation.' " *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir.1992) (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989)). " '[T]he Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... and the identity of the person making the representation and what was obtained or given up thereby.' " *Gottstein v. Nat'l Ass'n for the Self Employed*, 53 F.Supp.2d 1212, 1218 (D.Kan.1999) (quoting *Meyer v. Cloud County Bank & Trust*, 647 F.Supp. 974, 975–76 (D.Kan.1986)).

The court concludes that Plaintiff's complaint contains sufficient particularity to satisfy the heightened pleading standard under Rule 9(b). Defendants may obtain a more detailed account of the basis for Plaintiff's RICO claims through discovery.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' motion to dismiss (Doc. 2) is granted in part, and denied in part. Specifically, Plaintiff's RICO claims are dismissed against Defendant Promag. Plaintiff is granted twenty

---

**9.** Plaintiff's response brief, in a footnote, appears to concede that Defendant Promag cannot be a defendant to the RICO claims:

> The fact that the enterprise happens to be a defendant in the case is of no consequence, as claims can be asserted against the enterprise independent of the RICO claims. In fact, in the matter a [sic] bar, claims for fraud, unjust enrichment, conversion and the like are asserted against Promag, which claims are independent of the RICO cause of action.

days from the date of this order to file an amended complaint consistent with this opinion.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**